

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

IN RE:     **HTY, INC.**                                 **CHAPTER 11**
          **Debtor**                             **CASE NO. 16-13370-JDW**

### <u>ORDER</u>

THIS CAUSE having come on for hearing on the *Joint Motion for Entry of an Order Pursuant to 11 U.S.C. §363 to Sell Certain Property Free and Clear of Liens, Claims and Interest and for Other Relief* (the "Motion") **[DK #70]** filed herein by HTY, Inc. (The "Debtor") and Renasant Bank ("Renasant"), and the Court having heard and considered the Motion and noting no objections thereto and being otherwise fully advised in the premises, finds as follows, to-wit:

1.     Notice and a hearing were adequate and appropriate under the circumstances.

2.     On September 28, 2016, the Debtor filed its voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code. Since the Petition Date, the Debtor has continued to operate as a debtor-in-possession before this Bankruptcy Code.

3.     This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157, 11 U.S.C. §363, related statutes, related rules and various orders of reference. This is a core proceeding.

4.      On or about August 20, 2015, Nathan A. Yow, as President/Secretary of the Debtor, executed on its behalf, a Promissory Note in the amount of $844,710.00 for the benefit of the Bank ("Note"). To secure the indebtedness due under the Note, Nathan A. Yow, as President/Secretary of the Debtor, executed on its behalf, a Deed of Trust ("Deed of Trust") for the benefit of the Bank, granting same a first lien encumbering certain real property located in Lafayette County, Mississippi and more commonly known as Lots 1, 3, 4, 6-19, 21-30, 36, 37, 39-45, 50-55, 58, 59, 61, 62, 66-68, 70-86, and 88 of Steeplechase Subdivision ("Real Property"). A copy of the Note and Deed of Trust are attached hereto, incorporated herein by reference and marked as Exhibit "1". As of the Debtor's Petition Date, as defined herein, the indebtedness due the Bank under the Note was $939,462.78, which does not include subsequently accruing interest, attorneys' fees, and costs.

5.      This is a liquidating Chapter 11 case, in that the Debtor has previously announced its intent to liquidate substantially all of its assets during the Chapter 11 process. The Debtor has been seeking a purchaser for its real estate for some time now.

6.      The Debtor has secured a potential purchaser for the Real Estate in William Alias, Jr. (the "Purchaser"). The Debtor and the Purchaser have entered into an agreement (the "Contract") setting forth the terms and conditions of the sale of the Real Property, along with Lot 56. A copy of the Contract is attached, incorporated by reference and marked as Exhibit "2". Renasant holds the first, and only consensual lien on the Real Property, except for Lot 56. Renasant has agreed to the Motion, conditioned upon Renasant being paid in full all sums due under the Note. Nothing contained in the Motion or this Order reinstates the automatic stay of §362, which has been previously lifted in relation to the Real Property in favor of Renasant.

7.      The Debtor has established a valid business justification for the sale of the Real Property in that the sale of the Real Property furthers the Debtor's purpose and strategy in this

Chapter 11 case. In addition, the Purchaser is a good faith purchaser as contemplated within 11 U.S.C §363 (m).

8.      Accordingly, the Court grants the Motion, and approves the sale of the Real Property, along with Lot 56, free and clear of all liens, claims and encumbrances as contemplated by 11 U.S.C. §363, with the valid and perfected liens of Renasant, as to the Real Property, to attach to the sales proceeds, except for the Lot 56 proceeds as to which there are no liens or security interests. Renasant shall be paid in full all sums due under the Note from the sale proceeds. Debtor is further granted the authority to execute the terms and conditions of the Contract, and Nathan Yow, as President of the Debtor, is authorized and directed to execute such deeds, bills of sale or other commercially reasonable and standard documents evidencing the sale of the Real Property to the Purchaser.

9.      All remaining proceeds from the sale of the Real Property, after payment in full, to Renasant, of its Note, shall be delivered to counsel for the Debtor in Possession, to be placed in an interest bearing, separate escrow account established under the guidelines of the Office of the United States Trustee.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the *Joint Motion for Entry of an Order Pursuant to 11 U.S.C. §363 to Sell Certain Property Free and Clear of Liens, Claims and Interest and for Other Relief* is hereby granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that this is a final judgment as contemplated by the applicable bankruptcy rules.

# # END OF ORDER # #

SUBMITTED BY:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\HTY, Inc\Pleadings\Order - Motion to Sell Property 7-7-17.wpd



[redacted]

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $844,710.00 | 08-27-2014 | 08-20-2015 | [redacted]1005-1 | 0090 / R2 | [redacted]6505 | 31563 | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** HTY INC
1300 VAN BUREN AVE., #112
OXFORD, MS 38655

**Lender:** Renasant Bank
Oxford Office
2527 W Jackson Ave
PO Box 728
Oxford, MS 38655
(877) 367-5371

---

**Principal Amount: $844,710.00** **Date of Note: August 27, 2014**

**PROMISE TO PAY.** HTY INC ("Borrower") promises to pay to Renasant Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Forty-four Thousand Seven Hundred Ten & 00/100 Dollars ($844,710.00), together with interest on the unpaid principal balance from August 27, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $844,710.00 plus interest on August 20, 2015. This payment due on August 20, 2015, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular quarterly payments of all accrued unpaid interest due as of each payment date, beginning November 20, 2014, with all subsequent interest payments to be due on the same day of each quarter after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $10.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Renasant Bank, P O Box 4140 Tupelo, MS 38803.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by DEED OF TRUST DATED 04/30/2013 RECORDED AS INSTRUMENT #2013-3795 IN LAFAYETTE CO., MS.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representa… successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay o…

EXHIBIT
1

**PROMISSORY NOTE**
(Continued)

Loan No: XXXXX1005-1

Page 2

enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral, and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**HTY INC**

By: _____
NATHAN A YOW, President/Secretary of HTY INC

LASER PRO Lending, Ver. 11.4.0.534  Copr. Harland Financial Solutions, Inc. 1997, 2014.  All Rights Reserved.  - MS  S:\CFI\PL\D20.FC  TR-2150  PR-21

LAFAYETTE COUNTY

2013 MAY -1  AM 8: 17

CHANCERY CLERK

BY D.C. _____

Remy J. Vice  Chancery Clerk
Instrument 2013 -  3795
Filed/Recorded 5/1/2013 12:04 P
13 Pages Recorded
Lafayette County, Mississippi



RECORDATION REQUESTED BY: Renasant Bank , Oxford Office, 2527 W Jackson Ave, PO Box 728, Oxford, MS 38655, Tel. (877) 367-5371

WHEN RECORDED MAIL TO: Renasant Bank, Beth Baker, PO Box 4140, Tupelo, MS 38803, Tel. (877) 367-5371

SEND TAX NOTICES TO: Renasant Bank , Oxford Office, 2527 W Jackson Ave, PO Box 728, Oxford, MS 38655, Tel. (877) 367-5371

**FOR RECORDER'S USE ONLY**

This Deed of Trust prepared by: Steve White, Renasant Bank , 2527 W Jackson Ave, Oxford, MS 38655, (877) 367-5371

INDEXING INSTRUCTIONS: 1st D/T on 178.12 acres more less located in the SW 1/4 of S26, SE 1/4 of S27, NE 1/4 of S34 and and the NW 1/4 of S35, T6S, R5W, Lafayette Co Ms also being described as Lots
1,3,4,6,7,8,9,10,11,12,13,14,15,16,17,18,19,21,22,23,24,25,26,27,28,29,30,36,37,39,40,41,42, 43,44,45,50,51,52,53,54,55,58,59,61,62,66,67,68,70,71,72,73,74,75,76,77,78,79, 80,81,82,83,84,85,86,88, as per plat for Steeplechase Subdivision, Lafayette County Ms

GRANTOR: HTY, INC., 1300 VAN BUREN AVE., #112, OXFORD, MS 38655, Tel. (662) 232-2440

LENDER / BENEFICIARY: Renasant Bank , Oxford Office, 2527 W Jackson Ave, PO Box 728, Oxford, MS 38655, Tel. (877) 367-5371

TRUSTEE: Scott R Hendrix, 105 S Front St, Tupelo, MS 38804, Tel. (662) 842-4231

## DEED OF TRUST

THIS DEED OF TRUST is dated April 30, 2013, among HTY, INC., whose address is 1300 VAN BUREN AVE., #112, OXFORD, MS 38655 ("Grantor"); Renasant Bank (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Scott R Hendrix (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee for the benefit of Lender as Beneficiary, with power of sale, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in LAFAYETTE County, State of Mississippi:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as HWY. 6 WEST, OXFORD, MS 38655.

CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such

### DEED OF TRUST
### (Continued)

Page 2

amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real

## DEED OF TRUST
## (Continued)

Page 3

Property at all reasonable times to attend to Lender's Interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Mississippi law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall

### DEED OF TRUST
### (Continued)

Page 4

be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured, (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

## DEED OF TRUST
## (Continued)

Page 5

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will

Case 16-13370-JDW    Doc 35    Filed 01/10/17    Entered 01/10/17 08:26:57    Desc Main
Document    Page 22 of 35

**DEED OF TRUST**
**(Continued)**                                                    Page 6

make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

## DEED OF TRUST
### (Continued)

Page 7

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Sale of Property.** Grantor waives the provisions of Section 89-1-55, Mississippi Code of 1972, as amended, and any successor provisions, as far as said Section restricts the right of Trustee to offer at sale more than one hundred and sixty acres at a time, and Trustee may offer the Property as a whole or in part and in such order as the Trustee may deem best, regardless of the manner in which it may be described.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall, at the request of Lender, sell the Real Property after giving notice of the time, place and terms of sale as required by Section 89-1-55 of the Mississippi Code of 1972, as amended, and any successor provisions, and execute a deed to the purchaser of the Real Property. Out of the proceeds arising from the sale, the costs and expenses of executing this Deed of Trust, including a reasonable Trustee's fee and the attorneys' fees prescribed in the Note or in this Deed of Trust, shall first be paid; next the amount of the Indebtedness then remaining unpaid shall be paid; and, lastly, any balance remaining shall be paid to Grantor or to Grantor's representatives agents or assigns.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge

**DEED OF TRUST**
**(Continued)**

Page 8

reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is
involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in
Lender's opinion are necessary at any time for the protection of its interest or the enforcement of
its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the
Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph
include, without limitation, however subject to any limits under applicable law, Lender's attorneys'
fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and
expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or
injunction), appeals, and any anticipated post-judgment collection services, the cost of searching
records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal
fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor
also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this
section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and
obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall
have the power to take the following actions with respect to the Property upon the written request
of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including
the dedication of streets or other rights to the public; (b) join in granting any easement or creating
any restriction on the Real Property; and (c) join in any subordination or other agreement affecting
this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale
under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or
Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition
to the rights and remedies set forth above, with respect to all or any part of the Property, the
Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to
foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by
applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee
to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by
Lender and recorded in the office of the recorder of LAFAYETTE County, State of Mississippi. The
instrument shall contain, in addition to all other matters required by state law, the names of the
original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and
the name and address of the successor trustee, and the instrument shall be executed and
acknowledged by Lender or its successors in interest. The successor trustee, without conveyance
of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this
Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the
exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any
notice of default and any notice of sale shall be given in writing, and shall be effective when actually
delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited
with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail,
as first class, certified or registered mail postage prepaid, directed to the addresses shown near the
beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which
has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of
this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving
formal written notice to the other parties, specifying that the purpose of the notice is to change the
party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's
current address. Unless otherwise provided or required by law, if there is more than one Grantor, any
notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of
Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire
understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No
alteration of or amendment to this Deed of Trust shall be effective unless given in writing and
signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall
furnish to Lender, upon request, a certified statement of net operating income received from the
Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net
operating income" shall mean all cash receipts from the Property less all cash expenditures made in
connection with the operation of the Property.

## DEED OF TRUST
### (Continued)

Page 9

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Mississippi.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Mississippi as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Renasant Bank , and its successors and assigns.

**Borrower.** The word "Borrower" means HTY, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or

<div align="center">

**DEED OF TRUST**
**(Continued)**

</div>

Page 10

---

regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means HTY, INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means Renasant Bank , its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 30, 2013, in the original principal amount of $1,041,469.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is May 3, 2014,.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Scott R Hendrix, whose address is 105 S Front St, Tupelo, MS 38804 and any substitute or successor trustees.

DEED OF TRUST
(Continued)                                                     Page 11

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR:

HTY, INC.

By: _____
NATHAN A YOW, President/Secretary of HTY, INC.

---

CORPORATE ACKNOWLEDGMENT

STATE OF _Mississippi_                              )
                                                   ) SS
COUNTY OF _Lafayette_                               )

Personally appeared before me, the undersigned authority in and for the said County and State, on this
_30th_ day of _April_ , 20 _13_ , within my jurisdiction, the within
named NATHAN A YOW, President/Secretary of HTY, INC., a Mississippi corporation, and
acknowledged that for and on behalf of the said corporation, and as its act and deed, he or she signed,
executed and delivered the above and foregoing Deed of Trust for the purposes mentioned on the day
and year therein mentioned after first having been duly authorized by said corporation so to do.

_Dana Lynn Harwell_
NOTARY PUBLIC

My Commission Expires:
_March 12, 2014_

ID # 33911
DANA LYNN HARWELL
Commission Expires
March 12, 2014

---

LASER PRO Lending, Ver. 12.4.10.003  Copr. Harland Financial Solutions, Inc. 1997, 2013.   All
Rights Reserved.  · MS L:\CFI\LPL\G01.FC  TR-20026  PR-27

A 178.12, more or less, were tract of land being located in the Southwest Quarter of Section 26, the Southeast Quarter of Section 27, the Northeast Quarter of Section 34 and the Northwest Quarter of Section 35, Township 8 South, Range 5 West of the Chickasaw Meridian, Lafayette County, Mississippi and being more particularly described as follows:

Commencing at the common corner of Sections 26, 27, 34 and 35, Township 8 South, Range 5 West of the Chickasaw Meridian; thence South 77 degrees 48 minutes 25 seconds East a distance of 1175.09 feet to a ½" metal pipe set, said metal pipe being the true point of beginning of the herein described tract; thence South 89 degrees 02 minutes 21 seconds West, a distance of 808.85 feet to a 1/2" metal pipe set; thence North 00 degrees 57 minutes 39 seconds West, a distance of 71.63 feet to a ½" metal pipe set; thence South 89 degrees 02 minutes 21 seconds West, a distance of 162.79 feet to a ½" metal pipe set; thence South 62 degrees 38 minutes 40 seconds West, a distance of 281.45 feet to a ½" metal pipe set; thence South 04 degrees 36 minutes 35 seconds East, a distance of 206.45 feet to a ½" metal pipe set; thence South 04 degrees 37 minutes 48 seconds East, a distance of 813.70 feet to a ½" metal pipe set, thence North 89 degrees 41 minutes 09 seconds West, a distance of 2,589.63 feet to a 30" oak tree found; thence North 00 degrees 57 minutes 44 seconds West, a distance of 1,704.88 feet to a 2" inch iron pipe found; thence North 00 degrees 19 minutes 45 seconds West, a distance of 815.60 feet to a 1" iron pipe found in the South right of way line of U. S. Highway 6 (right of way varies); thence, along said right of way line the following calls, North 74 degrees 43 minutes 15 seconds East, a distance of 181.86 feet to a Mississippi Department of Transportation concrete monument found; thence a curve to the right with the following attributes: a delta angle of 33 degrees 39 minutes 39 seconds, a radius of 2698.11 feet, an arc length of 1585. 12 feet, a chord bearing of South 77 degrees 45 minutes 48 seconds West, and a chord length of 1562.42 feet to a Mississippi Department of Transportation concrete monument found; thence South 85 degrees 27 minutes 34 seconds East, a distance of 637.26 feet to a Mississippi Department of Transportation concrete Monument found; thence South 75 degrees 43 minutes 11 seconds East, a distance of 203.06 feet to a Mississippi Department of Transportation concrete monument found; thence South 85 degrees 25 minutes 36 seconds East, a distance of 200.22 feet to a Mississippi Department of Transportation Concrete monument found; thence North 57 degrees 34 minutes 23 seconds East, a distance of 124.34 feet to a Mississippi Department of Transportation concrete monument found; thence South 85 degrees 25 minutes 55 seconds East, a distance of 898.48 feet to a fence post found; thence, departing said right of way line, South 00 degrees 57 minutes 39 seconds East, a distance of 1,301.58 feet to the point of beginning Containing 7,637,891.08 square feet or 178.12 acres, more or less, and being subject to all codes, covenants, easements, revisions, restrictions, regulations, and rights of way of record.

**LESS AND EXCEPT:**

Lots 2, 5, 20, 31, 32, 33, 34, 35, 38, 46, 47, 48, 49, 56, 57, 60, 63, 64, 65, 69, 87 as per Plat for Steeplechase Subdivision, on file in the office of the Chancery Clerk of Lafayette County, Mississippi, filed in Plat Cabinet D Slide 157 and referenced as Slide B-157, recorded May 3, 2006, at 10:00 a.m.; and as revised by Final Plat - First Revision of Steeplechase, filed in Plat Cabinet B, Slide 157 and referenced as Slide B-157, recorded May 11, 2007, at 9:15 a.m.

The above tract of land being one and the same as:

Lots 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 36, 37, 39, 40, 41, 42, 43, 44, 45, 50, 51, 52, 53, 54, 55, 58, 59, 61, 62, 66, 67, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 88 and all streets and common areas as per Plat for Steeplechase Subdivision, on file in the office of the Chancery Clerk of Lafayette County, Mississippi, filed in Plat Cabinet D Slide 157 and referenced as Slide B-157, recorded May 3, 2006, at 10:00 a.m.; and as revised by Final Plat - First Revision of Steeplechase, filed in Plat Cabinet B, Slide 157 and referenced as Slide B-157, recorded May 11, 2007, at 9:15 a.m.

**INDEXING INSTRUCTIONS:**

Southwest Quarter of Section 26, Township 8 South, Range 5 West, Lafayette County, Mississippi
Southeast Quarter of Section 27, Township 8 South, Range 5 West, Lafayette County, Mississippi
Northeast Quarter of Section 34, Township 8 South, Range 5 West, Lafayette County, Mississippi
Northwest Quarter of Section 35, Township 8 South, Range 5 West, Lafayette County, Mississippi
Lots 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 36, 37,
39, 40, 41, 42, 43, 44, 45, 50, 51, 52, 53, 54, 55, 58, 59, 61, 62, 66, 67, 68, 70, 71, 72, 73, 74,75, 76, 77,
78, 79, 80, 81, 82, 83, 84, 85, 86, 88, Steeplechase Subdivision, Lafayette County, Mississippi

NATHAN A YOW, President/Secetary of HTY, INC.

**STATE OF MISSISSIPPI**

**COUNTY OF LAFAYETTE**

### EXCLUSIVE OPTION TO PURCHASE REAL ESTATE

This agreement entered into this _____ day of March, 2017, between HTY INC., A Mississippi Corporation, hereinafter called "Seller", whether one or more, and WILLIAM ALIAS, JR., whose address is 2653 West Oxford Loop, Ste 108, Oxford, MS 38655, hereinafter called "Buyer", whether one or more.

### WITNESSETH:

In consideration for the amount of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00), cash in hand paid by Buyer to Seller, the receipt and sufficiency of which is hereby acknowledged and confessed, Seller hereby grants unto Buyer, for a period of **SIX (6) MONTHS** (180 calendar days) from the above date, the exclusive right and option to exercise this option to purchase FIFTY FIVE (55) Residential Lots 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 23, 28, 30, 36, 37, 39, 40, 41, 42, 43, 44, 45, 50, 51, 52, 53, 54, 55, 56, 58, 59, 61, 66, 67, 68, 71, 72, 73, 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 88 in the Steeplechase Subdivision in Lafayette County, Mississippi and shown on the attached Exhibit 1.

The total purchase price shall be the sum of ONE MILLION, ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,100,000.00), including the $1,000 sum paid for this Option, to be paid by check from Buyer at the time of the closing of this sale, according to the terms and conditions herein. At said closing, the Option purchase price shall be adjusted and increased by the additional payment of prorated property taxes and six percent (6%) APR which shall be added to the total purchase price and shall accrue from the original date of signing of the Option to Purchase Real Estate through the option period and any subsequent renewal. This Option may be extended for an additional **NINETY (90) DAYS** by written notice to Sellers within the original SIX-MONTH term of Buyer's desire to extend, along with a NON-REFUNDABLE payment of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00).



- 1 -

EXHIBIT

2

**STATE OF MISSISSIPPI**

**COUNTY OF LAFAYETTE**

<u>**EXCLUSIVE OPTION TO PURCHASE REAL ESTATE**</u>

This agreement entered into this _____ day of March, 2017, between HTY INC., A Mississippi Corporation, hereinafter called "Seller", whether one or more, and WILLIAM ALIAS, JR., whose address is 2653 West Oxford Loop, Ste 108, Oxford, MS 38655, hereinafter called "Buyer", whether one or more.

<u>WITNESSETH:</u>

In consideration for the amount of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00), cash in hand paid by Buyer to Seller, the receipt and sufficiency of which is hereby acknowledged and confessed, Seller hereby grants unto Buyer, for a period of **SIX (6) MONTHS** (180 calendar days) from the above date, the exclusive right and option to exercise this option to purchase FIFTY FIVE (55) Residential Lots 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 23, 28, 30, 36, 37, 39, 40, 41, 42, 43, 44, 45, 50, 51, 52, 53, 54, 55, 56, 58, 59, 61, 66, 67, 68, 71, 72, 73, 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 88 in the Steeplechase Subdivision in Lafayette County, Mississippi and shown on the attached Exhibit 1.

The total purchase price shall be the sum of ONE MILLION, ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,100,000.00), including the $1,000 sum paid for this Option, to be paid by check from Buyer at the time of the closing of this sale, according to the terms and conditions herein. At said closing, the Option purchase price shall be adjusted and increased by the additional payment of prorated property taxes and six percent (6%) APR which shall be added to the total purchase price and shall accrue from the original date of signing of the Option to Purchase Real Estate through the option period and any subsequent renewal. This Option may be extended for an additional **NINETY (90) DAYS** by written notice to Sellers within the original SIX-MONTH term of Buyer's desire to extend, along with a NON-REFUNDABLE payment of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000.00).



- 1 -

**EXHIBIT**

2

To **EXERCISE** this option, Buyer shall, on or before the dates(s) the Option expires, give Seller written notice to the effect in person or mailed to the address shown by the Seller's signature below.

All **NOTICES** to Seller, if by mail, shall be considered as having been given when placed in the United States Mail, postage prepaid by the Buyer, or FedEx. Notice to any one Seller is deemed notice to all.

In the event the Buyer fails to exercise this option and unless otherwise expressly provided herein, the sum paid for this option shall be retained by the Seller, such Option Consideration being **NON-REFUNDABLE**. In such event, the Option Purchase Money paid by Buyer unto Seller shall be considered to be the **SOLE, EXCLUSIVE, FULL AND COMPLETE SATISFACTION** and accord of any damages suffered by Seller because of Buyer's failure to exercise his option to purchase the subject real property. TO BE CLEAR, Buyer shall not owe Seller any amount whatsoever over the Purchase Option Consideration if he does not exercise his purchase rights hereunder.

**ACCESS:** Without having the obligation to do so, the Buyer, and its agents, shall have the right, upon written or verbal notice to the Seller or either of them, to enter the property, from time to time while this option is in effect, to survey, inspect, conduct soil borings and tests, or otherwise examine and/or test the property and the facilities located thereon (including but not limited to the tower). Buyer assumes all liability for damages to the property and/or persons caused by activities by Buyer or its agents under this paragraph and this obligation shall survive any termination or rescinding of this agreement.

**BINDING EFFECT:** This option is for the benefit of and binding upon the heirs, successors and assigns of the parties hereto. This agreement is the result of negotiations between the parties and shall be considered as jointly drafted for all purposes.

**SOLE OWNER:** The Seller represents that, as of the date of this option, Seller, in its own name, has good and merchantable title to the property, except that the Seller is currently in

-2-

Chapter 11 **BANKRUPTCY** and said sale is contingent on approval of the appropriate Court and Trustee, for which Seller obligates itself to seek immediate approval thereof. **Notwithstanding anything to the contrary herein, all dates provided for herein shall not begin to run until the date of an order of the Bankruptcy Court approving this contract.**

**STAYY LIFTED:  In the event that Buyer does not extend or exercise his option at the conclusion of the initial Six-Month period, then it is EXPRESSLY AGREED AND WARRANTED BY HTY, INC., its officers and shareholders, to its lender, RENASANT BANK, that neither it nor they shall directly or indirectly take any steps to interfere with the stay which has been lifted by prior court order.  It is EXPRESSLY understood that this condition and representation by HTY, INC. is material to and the essence of RENASANT approving the execution of the contract,  and which would not be submitted to the court for approval without said representation from the SELLER, and the individuals owning and operating the SELLER.**

**NO CONTINGENT RIGHTS:**  Seller represents that the land is not part of his homestead, nor is it subject to any homestead or marital rights of any other person or, if it is homestead or subject to marital rights, sufficient persons have signed this document to allow its enforcement.  Seller will take such actions as may be necessary to maintain such title and status pending closing.

**EXERCISE:**  Upon the giving of timely notice of the exercise of this Option as above provided, Seller shall then be obligated to sell and Buyer shall then be obligated to purchase the above described property in a timely manner on the following terms and conditions:

1.     The parties agree to **PRORATE** all city, and county ad valorem taxes for the then current tax year on the property as of the date of the execution of the Exclusive Option to Purchase Real Estate.  HOWEVER, during the running of the time period of the option(s) herein, HTY, INC., shall be responsible for and pay, before publication of delinquent taxes, the real property taxes and assessments due on the subject lots.  This representation

-3-

is a material and a condition precedent to Renasant even being willing to present this contract to the Court for consideration and approval.

2. Transfer of title shall be by recordable general **WARRANTY DEED**, signed and delivered by Seller, along with clear and marketable title.

3. Seller corporation shall be in good standing as of the date of the closing, and shall, simultaneously therewith, provide a **CORPORATE RESOLUTION**, with proper seal affixed, demonstrating the authority of the signature to act for and bind the corporation, as a duly authorized act for and on behalf of said corporation.

4. Necessary **EASEMENTS**, if any, to the subject lands for access to a public road, construction, power and/or telephone will be granted by Sellers and shall be included in Warranty Deed.

5. William Alias, Jr. shall have the option to **TRANSFER** the Option to another Buyer Entity at his discretion. If Buyer transfers his Option, William Alias, Jr. shall still be solely responsible for all expenses accrued during the option period unless otherwise agreed to in writing by the parties hereto.

6. **POSSESSION** of the above-described real property shall be delivered over to Buyer at the closing with the delivery of the deed.

7. The **CLOSING** of this sale shall take place at a mutually acceptable date and place, following the exercise of the option but not more than ten (10) working days after the Buyer has received the binder referred to below and after all contingencies mentioned in this Option have been met.

8. **ADDITIONAL FEES**: In the event that the Buyer exercises the Option provided for herein, the Buyer shall pay unto the Seller the following Additional Fees, in addition to the $1,100,000.00 purchase price:

A. The Buyer shall pay unto the Seller prorated **PROPERTY TAXES** which shall accrue from the date of execution of the instant Option to Purchase Real Estate through the expiration or termination of the option and any subsequent renewal period regardless whether the Buyer completes the purchase.

B. The Buyer further agrees to pay unto the Seller **INTEREST** in the amount of six percent (6%) APR on the agreed purchase price of $1,100,000.00 which shall accrue from date of execution of the instant Option to Purchase Real Estate through the end of

-4-

the option and any subsequent renewal regardless of whether the Buyer completes the purchase.

9.    **BROKERS:**  Both parties expressly represent unto the other that they are and have not been not represented by any broker or realtor in connection with any aspect of this transaction.  To that end, and in the event any claim is made against one of the parties hereto, the party by whom the allegation of relationship is made, shall indemnify the other party against all claims and damages in connection therewith, including cost of defense.

10.    **OTHER OFFERS:**  If, during the time of the original Option or any extensions thereof, Seller receives bonafide, arms-length offer in excess of the agreed purchase price of $1,100,000 plus Additional Fees, Seller shall provide such complete details of the offer to Buyer, in the time and manner as provide for above.  Upon receipt of the actual bonfide third-party offer, Buyer shall have first right of refusal and be given Seventy-Two (72) hours to elect to purchase the property described herein, upon the terms and conditions herein.  In the event of such bonafide offer, and Buyer election to proceed, Buyer shall have Ten (10) days from the date of election to close on the purchase.

10.    **ESSENCE AND PURPOSE:**  Time is of the essence with regard to this Option.  It is expressly acknowledged by the Seller that Buyer's intent to purchase involves a conservation easement.  To that extent, Seller agrees to cooperate in whatever reasonable necessary to accommodate such intent.

11.    **JURISDICTION:**  Subject to the rights of the U. S. Bankruptcy Court, any action involving the legitimacy, interpretation of enforcement of this Option shall be exclusively in the Chancery Court of Lafayette County, Mississippi.

IN WITNESS WHEREOF, Seller and Buyer have executed this instrument in duplicate originals as of the date first set out above.

BUYER:                                             SELLER:

_____          _____
William Alias, Jr.                                 HTY, INC., A MS CORP.
2653 West Oxford Loop, Ste 108           BY: NATHAN A. YOW, President

-5-

Oxford, MS 38655

_____

_____

**Acknowledged & Approved:**

_____

NATHAN A. YOW, Individually